IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESSE TRUJILLO,

    Plaintiff,

vs.                                                                                           Civ. No. 00-1682 JP/LCS-ACE

BERNALILLO COUNTY,
SERGEANT M. TURNER, and
DEPUTY K. SHELDAHL, in their
individual capacities as employees of
Bernalillo County,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On March 5, 2001, the Defendants filed Defendants' Motion for Summary Judgment (Doc. No. 11). Having reviewed the parties' briefs and the relevant law, I find that the Motion for Summary Judgment should be denied.

A. Background

    1. Evidence That is Undisputed or Favorable to Plaintiff.

The following is evidence in the record that is either undisputed or favorable to Plaintiff where evidence conflicts. On February 20, 2000 at about 2:00 a.m., the Plaintiff and a companion, Gabriel Herrera, were at a gas station purchasing gas. An intoxicated man came up to the Plaintiff and Mr. Herrera. The gas station security guard, Donald Hare, heard the men arguing and specifically heard the intoxicated man say "I got a .25." Mr. Hare called the police and asked the men to leave, which they did. The police dispatcher then issued a dispatch which stated that there was an altercation involving a deadly weapon at the gas station. Both Defendant Turner, a Bernalillo County Sheriff's Department Sergeant, and Defendant Sheldahl, a K-9 unit

dog handler with the Bernalillo County Sheriff's Department, heard the dispatch. After Defendant Turner arrived at the gas station, Mr. Hare told Defendant Turner that the intoxicated man had a gun.

A few minutes after Defendant Turner arrived at the gas station, the Plaintiff drove by in his truck in which Mr. Herrera was a passenger. At that point, Mr. Hare identified the truck as the Plaintiff's and stated to Defendant Turner that the Plaintiff was one of the men who had been involved in the altercation. Defendant Turner pursued the Plaintiff's truck and attempted to stop it by turning on his car's flashing lights. Instead of stopping, the Plaintiff sped off. The Plaintiff eventually stopped his truck and ran from the truck leaving Mr. Herrera behind. When Defendant Turner came to the truck, he handcuffed Mr. Herrera and called for backup including the K-9 unit. No one asked Mr. Herrera about a weapon. Mr. Herrera was eventually allowed to go on his way.

Meanwhile, the Metro Air Unit helicopter arrived at the location where the Plaintiff had stopped his truck. The helicopter video camera recorded what occurred on the ground and also recorded conversations which took place in the helicopter. Using a night vision device, the helicopter crew located the Plaintiff hiding under a trailer.

The Sheriff's deputies, including Defendants Turner and Sheldahl, surrounded the trailer. Defendants Turner and Sheldahl state that they called out to the Plaintiff several times, asking him to come out and informing him that they had a dog from the K-9 unit. The Plaintiff claims that he could not hear the Sheriff's Deputies because of the noise from the helicopter hovering above the trailer. After the Plaintiff did not respond to the requests to come out from under the trailer, Defendant Sheldahl gave the dog the signal to make contact with the Plaintiff. However, shortly

2

before the dog was sent to the trailer, a somewhat unclear audio recording captured on the helicopter's video tape indicates that someone stated that the men from the truck were not armed. Once the dog attacked and bit the Plaintiff, he came out from under the trailer. Plaintiff received prompt medical care for the dog bites. The Plaintiff spent three days in the hospital because of the bites.

    2. Plaintiff's Causes of Action.

The Plaintiff's lawsuit contains three claims:  1)  excessive and unnecessary use of force in violation of the Fourth Amendment brought under 42 U.S.C. §1983; 2) common law battery; and 3) municipal liability. Defendants Turner and Sheldahl argue in their motion for summary judgment that they are entitled to qualified immunity for the alleged Fourth Amendment violation. They also ask for an award of attorney's fees and costs for filing this Motion for Summary Judgment.

B.  Standard of Review

Summary judgment motions involving a qualified immunity defense are determined somewhat differently than other summary judgment motions. *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995). When a defendant raises qualified immunity in a motion for summary judgment, the burden shifts to the plaintiff to meet a strict two-part test. *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). "'First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue.'"  *Id.* (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534-35 (10th Cir. 1995)).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme

Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). If, and only if, the plaintiff establishes both elements of the test does a defendant then bear the traditional burden of showing "'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Id.* (quoting *Albright*, 51 F.3d at 1535)).

C. Discussion

    1. Whether the Alleged Facts Demonstrate a Violation of the Fourth Amendment.

The Court evaluates an excessive force claim under the objective reasonableness test of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395-96 (1994). Factors to consider in determining reasonableness include "the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer, and whether the subject is resisting arrest." *Wilson v. Meeks*, 52 F.3d 1547, 1553 (10th Cir. 1995)(citing *Graham*, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Quezada v. County of Bernalillo*, 944 F.2d 710, 716 (10th Cir. 1991). In addition, the reasonableness determination must be made "from the perspective of a reasonable officer on the scene...." *Id*.

The Plaintiff has shown that although he fled from Defendant Turner, Defendants Turner and Sheldahl had no direct knowledge that the he was actually armed. The police dispatch and Mr. Hare's statement to Defendant Turner do not indicate specifically that the Plaintiff was armed. In fact, the helicopter video tape suggests that Defendants Turner and Sheldahl may have

4

been told that the Plaintiff was not armed prior to releasing the dog to attack the Plaintiff. Moreover, the Plaintiff's flight from Defendant Turner is not a severe crime. It is a misdemeanor. 1978 NMSA, §30-22-1 (1963)(evading an officer). Under these circumstances, the Plaintiff has come forward with sufficient facts to demonstrate that Defendants Turner and Sheldahl's use of the dog to attack the Plaintiff was not objectively reasonable and violated the Fourth Amendment.

    2. Whether Plaintiff's Fourth Amendment Right was Clearly Established.

The Supreme Court recently held that although it is clearly established under *Graham* that "the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness," the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, ___ S.Ct. ___, 2001 WL 672265 at *5. In other words,

> [a]n officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Id*. at *7.

It is clearly established that a police officer may not use deadly force to seize an unarmed fleeing felony suspect unless the police officer has reasonable cause to believe that the suspect poses a significant threat of death or serious bodily injury to the police officer or others. *Tennessee v. Garner*, 471 U.S. 1, 3 (1985). The Tenth Circuit defines "deadly force" as including force which creates a substantial risk of causing serious bodily harm. *Ryder v. City of Topeka*, 814 F.2d 1412, 1416 n.11 (10th Cir. 1987) (citing the Model Penal Code). In this case, the undisputed facts and facts favorable to the Plaintiff show that it would be unreasonable for

Defendants Turner and Sheldahl to believe that the law allowed the use of deadly force, i.e., use of the dog, to seize the Plaintiff when there was no demonstrable evidence that he posed a significant threat of death or serious bodily injury to anyone. Consequently, the use of a dog to seize the Plaintiff violated a clearly established Fourth Amendment protection.

     3.  Whether Defendants Turner and Sheldahl Can Show There is No Genuine Issue of Material Fact.

The burden then shifts to Defendants Turner and Sheldahl to show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.  "This requires the defendant[s] to show that there are no disputes of material fact as to whether [their] conduct was objectively reasonable in light of clearly established law and the information known to the defendants[s] at that time." *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).  Defendants Turner and Sheldahl claim that although they had no direct evidence that the Plaintiff was armed, they nonetheless believed there was a possibility that he was armed. That belief, however, lacks evidentiary support.  Indeed, the helicopter video tape indicates that Defendants Turner and Sheldahl may have actually known prior to releasing the dog that the Plaintiff was not armed. Defendants Turner and Sheldahl also contend that they believed that the Plaintiff may have committed an assault with a deadly weapon, a fourth degree felony under 1978 NMSA, §30-3-2 (1963).   Again, the facts that Defendants Turner and Sheldahl had no direct evidence that the Plaintiff was armed and may have been informed that Plaintiff was unarmed are inconsistent with a belief that the Plaintiff committed an assault with a deadly weapon.  Defendants Turner and Sheldahl have failed to demonstrate that there are no disputes of material fact as to the objective reasonableness of their use of a dog to attack the Plaintiff.  Defendants Turner and Sheldahl have,

therefore, failed to show that they are entitled to qualified immunity.  The Motion for Summary Judgment will be denied.  The Defendants' request for attorney's fees and costs will also be denied.

IT IS ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 11) is denied and Defendants' request for attorney's fees and costs is denied.

_____
CHIEF UNITED STATES DISTRICT JUDGE